*1186 OPINION.
Trussell :
A reading of the record and the testimony in this appeal can not fail to produce the impression that the two patents covering the so-called duplicating machines, immediately upon their issue and on March 1, 1913, had a very considerable capital value, and the taxpayer has computed such value from the tabulation of tangible assets and earnings shown in the findings of fact by applying 8 per cent of the average earnings for the period as the earnings of the tangible assets, and the balance of such average earnings as the earnings of the taxpayer’s intangible assets, including its patents, and, capitalizing the figure so obtained on the basis of 15-per cent, has ascribed a total value to intangibles as of March 1, 1913, of $335,405.47. It has subtracted from this figure what it regards as the residual value of the old reducing machine patents and a certain secret process, namely, $57,464.60, thus producing a valuation of $287,940.87 as the capital value of the duplicating machine patents.
It appears, however, that from the inception of the taxpayer’s corporate existence in 1904 to the year 1913 its earnings had been produced more largely by the use of its reducing machines than by the sale of such machines, while, after 1913, the earnings which might be ascribed to the duplicating machine patents were expected to be derived more largely from the profit upon the sale of the machines. While large earnings were made during the period from 1913 to 1922, inclusive, the taxpayer has apparently made no effort tG segregate the profits from the sale of the duplicating machines from profits arising from the other activities of its business. We are not informed whether the earnings for the period from 1913 to 1922 have been produced largely from the profits upon the sale of duplicating machines or what part of such profits arose from the manufacture of dies produced by such machines or by the old machines. Neither are we informed as to how many of the duplicating machines have been manufactured and sold, except for the three years of 1913, 1915, and 1916.
We are not holding in this appeal that the March 1, 1913, value of these duplicating machine patents may not be properly computed on the basis of profits realized from their sale and use during years following 1913, but we are constrained to hold, in the present state of the record of this appeal, which shows no segregation of profits ascribable to th*e duplicating machine patents as distinguished from *1187 profits oí other businesses, that we are unable to determine what value should be ascribed to those patents and, therefore, what deduction should be allowed on account of their gradual exhaustion.
The determination of this appeal is not to be taken as closing the door to any presentation of facts which will support a definite finding of patent values as a basis for an exhaustion deduction applicable to any annual tax period following the year 1919.